**LIBERTY MUTUAL INSURANCE COMPANY**

v.

**Linda KAYA.**

**No. 2007–254–Appeal.**

Supreme Court of Rhode Island.

May 23, 2008.

Todd L. Brown, William Elderkin, Jr., for plaintiff.

Joseph J. Altieri, Warwick, for defendant.

Present: WILLIAMS, C.J., GOLDBERG, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

This appeal arises out of a dispute concerning the underinsured-motorist coverage of an automobile insurance policy. The defendant, Linda Kaya, appeals from the Superior Court's grant of summary judgment in favor of the plaintiff, Liberty Mutual Insurance Company (Liberty Mutual), in an action for declaratory judgment. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### Facts and Procedural History

On August 16, 2001, defendant was stopped in her automobile at the intersection of Tiffany Street and Atwood Avenue in Cranston when she was rear-ended by an automobile operated by Lori Ann Nota and owned by Albert J. Nota (the Notas). The impact was great, resulting in extensive damage to Ms. Kaya's automobile.[1]

Shortly after the collision, rescue personnel transported Ms. Kaya to Rhode Island Hospital where she underwent multiple X-rays of her neck, lower back, chest, and hip and was treated for a cervical strain. The medical record notes Ms. Kaya did not suffer any loss of consciousness, but she did complain of pain in her back and right lower abdomen.

---

1. Our recitation of the essential facts derives primarily from the February 14, 2005 decision of the arbitrator. The parties do not dispute his factual findings.

Five days later, Ms. Kaya went to the Cranston Medical Center complaining of right ankle pain and feeling foggy and dizzy. Ms. Kaya received an X-ray of her right ankle, and no fractures were found. The doctor noted Ms. Kaya's complaints about a "head rush," but did not prescribe any medication.

On September 28, 2001, Ms. Kaya met with a neurologist to discuss her symptoms of sensitivity to light, headaches, and difficulty with short-term memory and concentration. The neurologist administered an EEG, which was mildly abnormal, and advised Ms. Kaya to submit to a neuropsychological evaluation. On November 13, 2001, Dr. William Whelihan conducted a neuropsychological examination of Ms. Kaya. The test results indicated that Ms. Kaya had slow processing speed and memory difficulties, causing Dr. Whelihan to diagnose her with post-concussive disorder. In August or September 2002, Dr. Francis Sparadeo conducted additional neuropsychological examinations of Ms. Kaya, and he concluded that the aforesaid cognitive deficits were consistent with a history of concussion. Doctor Stephen Mernoff also reviewed the results of the neuropsychological evaluation, and advised Ms. Kaya that some of the test results were perhaps related to depression. Ms. Kaya also reported a lack of taste and smell and headaches every four days that would last a "good portion of the day." She continued to consult doctors for discomfort in her neck, upper back, and lower back.

Ms. Kaya and St. Paul Travelers Insurance Company, the Notas' insurance carrier, agreed to submit her claim for damages to "final and binding" arbitration. The arbitration agreement provided in part that:

"should the award of the arbitrator, including any prejudgment interest included ed therein or added thereto, exceed the sum of $100,000.00, [Ms. Kaya] will accept the sum of $100,000.00 in full satisfaction of the award and any prejudgment interest included therein or added thereto."

Liberty Mutual, Ms. Kaya's insurance carrier, gave its consent to her to settle the claim for $100,000, but declined to participate in the arbitration.

The arbitrator determined that Ms. Kaya suffered a concussion as a result of the accident. The arbitrator also found that Ms. Kaya's lack of taste and smell and cognitive impairment in the two years after the accident were significant. Based on Ms. Kaya's records of her medical expenses, the arbitrator awarded her $14,745.79. The arbitrator awarded Ms. Kaya $13,000 to compensate her for lost wages for a period of one year, as well as $500 a week for the first year after the accident, for an additional $26,000. Finally, the arbitrator awarded Ms. Kaya $20,000 for her pain and suffering. The total award for Ms. Kaya was $73,745.79, to which 42 percent interest was added, making the total damages, including interest, to be $104,719.02. Ms. Kaya then settled her claim against Mr. Nota for his insurance policy limit of $100,000. Neither party sought to confirm the arbitration award in Superior Court.

Next, Ms. Kaya pursued a claim against Liberty Mutual under the underinsured-motorist provisions of her policy, and on November 4, 2005, she made a demand for arbitration under the terms of the policy. In response, Liberty Mutual filed a complaint for declaratory judgment in Superior Court seeking a declaration that Ms. Kaya was not entitled to underinsured-motorist benefits under the policy because, *inter alia*, the tortfeasor was not an underinsured motorist and Ms. Kaya had been

fully satisfied for the losses she incurred as a result of the accident.

On February 27, 2007, the hearing justice granted Liberty Mutual's motion for summary judgment finding that Ms. Kaya was barred by the doctrine of collateral estoppel from pursuing her underinsured-motorist insurance claim against Liberty Mutual because the amount of Ms. Kaya's damages had been determined in the arbitration of her claim against the Notas. Further, the hearing justice held that Ms. Kaya's damages had been established at an amount less than the limits of the Notas' insurance coverage; thus, the Notas were not by definition underinsured motorists. Judgment was entered for Liberty Mutual on March 5, 2007, from which Ms. Kaya timely appealed to this Court.

## Standard of Review

This Court reviews the granting of a motion for summary judgment on a *de novo* basis. *DiBattista v. State*, 808 A.2d 1081, 1085 (R.I.2002). We will affirm a summary judgment "only when, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact remains to be decided, and that the moving party is entitled to judgment as a matter of law." *Roe v. Gelineau*, 794 A.2d 476, 481 (R.I.2002). Furthermore, "a litigant opposing a motion for summary judgment has the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *D'Allesandro v. Tarro*, 842 A.2d 1063, 1065 (R.I.2004) (quoting *Santucci v. Citizens Bank of Rhode Island*, 799 A.2d 254, 257 (R.I. 2002)).

Additionally, "[w]hen presented with questions of statutory interpretation

this Court engages in a *de novo* review." *State v. LaRoche*, 925 A.2d 885, 887 (R.I. 2007). As this Court previously has stated, "when the language of a statute is clear and unambiguous, [this Court] must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* (quoting *State v. Oliveira*, 882 A.2d 1097, 1110 (R.I.2005)). "It is only when confronted with an unclear or ambiguous statutory provision that this Court will examine the statute in its entirety to discern the legislative intent and purpose behind the provision." *LaRoche*, 925 A.2d at 888.

## Discussion

It is our opinion, after our *de novo* review, that Ms. Kaya is not entitled to seek recovery under the underinsured-motorist coverage of her policy with Liberty Mutual. The relevant portion of the policy provides:

"We [Liberty Mutual] will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury:'

"1. Sustained by an 'insured;' and

"2. Caused by an accident."

General Laws 1956 § 27–7–2.1(g) provides that for the purposes of the statute concerning uninsured-motorist coverage, the term " 'uninsured motorist' shall include an underinsured motorist." Section 27–7–2.1(g) then defines an "underinsured motorist" as:

"the owner or operator of a motor vehicle who carries automobile liability insurance with coverage in an amount less than the limits or damages that persons insured pursuant to this section are legally entitled to recover because of bodily injury, sickness, or disease, including

death, resulting from that injury, sickness or disease."

 It is clear to us from the language of both the statute and insurance policy that Ms. Kaya may seek damages from Liberty Mutual only in the amount that she legally is entitled to recover from the Notas, an amount that has been established conclusively in the "final and binding" arbitration to which she agreed. We reject her contention that she is entitled "to show that her damages exceed the limits of coverage of the negligent tortfeasor" in a second forum. Even if she were granted a second opportunity to establish damages in excess of the Notas' policy limits, she would not be "legally entitled to recover" such damages from the Notas, the *sine qua non* of her underinsured-motorist coverage with Liberty Mutual.

Although we need not address the issue of collateral estoppel for the purposes of this appeal, we reach the same result as the hearing justice and, therefore, we affirm the judgment in favor of Liberty Mutual. Ms. Kaya legally is entitled to recover from the Notas the sum of $73,745.79, excluding interest.[2] The Notas' liability may not be reopened, relitigated, or rearbitrated. Accordingly, Ms. Kaya is not eligible to seek recovery under the plain terms of the underinsured-motorist coverage provisions of her insurance policy with Liberty Mutual. Ms. Kaya already has received full compensation for the damage attributable to the tortfeasors. She may not seek additional recovery under the terms of her insurance contract.

### Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior Court. The record may be returned to the Superior Court.

Justice FLAHERTY did not participate.

---

**2.** Prejudgment interest is not an element of damages for purposes of recovery under the underinsured-motorist statute. *Balian v. Allstate Insurance Co.,* 610 A.2d 546, 550 (R.I. 1992).